IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Elaine Torres, ) | C/A No. 0:07-2865-PMD-PJG |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | |
| ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Elaine Torres ("Torres"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On November 15, 2004, Torres applied for SSI and for DIB. Torres's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a video hearing held on August 25, 2006 at which Torres appeared and testified, the ALJ issued a decision dated September 28, 2006 denying benefits and finding that Torres was not disabled. The ALJ, after hearing the testimony of a vocational expert, concluded that work exists in the national economy which Torres can perform.

Torres was forty years old at the time of the ALJ's decision. She has a high school education, some college education, and a medical assistant certificate. Torres has past relevant work experience as a medical assistant and a machine operator. Torres alleges

disability since October 27, 2004, due to a herniated disc and arachnoiditis[1] (Tr. 76) resulting in problems with mobility and extreme pain (Tr. 77).

In the decision of September 28, 2006, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since October 27, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit six hours in an eight-hour workday, to stand and walk two hours in an eight-hour workday and to frequently lift and carry five pounds with a heaviest weight lifted occasionally of ten pounds, with no climbing, crawling, balancing or exposure to industrial hazards, with a sit/stand option at will and no driving of motor vehicles.

\* \* \*

6. The claimant is unable to perform any past relevant work based on the residual functional capacity described above (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 14, 1965 and was 38 years old on the alleged disability onset date and she is currently 40 years old, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

---

[1]"Arachnoiditis" means "[i]nflamation of the arachnoid membrane." Taber's Cyclopedic Medical Dictionary 157 (20th ed. 2001).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR[2] 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a "disability," as defined in the Social Security Act, from October 27, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-23.) On June 21, 2007, the Appeals Council denied Torres's request for review, making the decision of the ALJ the final action of the Commissioner. Torres filed this action on August 17, 2007.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether

---

[2]Social Security Ruling.

the claimant has a "severe" impairment; (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant's impairments prevent her from doing any other kind of work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence

and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

## DISCUSSION

In the present case, the ALJ determined that Torres was unable to perform any past relevant work, but retained the residual functional capacity ("RFC") to

> sit six hours in an eight-hour workday, to stand and walk two hours in an eight-hour workday and to frequently lift and carry five pounds with a heaviest weight lifted occasionally of ten pounds, with no climbing, crawling, balancing or exposure to industrial hazards, with a sit/stand option at will and no driving of motor vehicles.

(Tr. 16.) However, Torres alleges that the ALJ failed to properly assess her RFC. Specifically, Torres claims the ALJ failed to explain his findings regarding Torres's residual functional capacity ("RFC"), as required by Social Security Ruling 96-8p. In support of this allegation, Torres claims: (1) general ambiguity in the RFC findings; (2) failure of the ALJ to perform a complete function-by-function assessment of Torres's RFC; and (3) failure of the ALJ to specify the frequency of Torres's need to alternate between sitting and standing. The Commissioner contends that the ALJ's decision is supported by substantial evidence and free of legal error.

### A. Alleged General Ambiguity in the RFC Findings

Torres claims the ALJ's residual functional capacity assessment "does not specifically explain how he arrived at [the Plaintiff's RFC] restrictions" and "is simply conclusory." Torres states the RFC assessment fails to "contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." (Pl.'s Br. 10-12.) The court disagrees.

In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). SSR 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC. In the instant action, the ALJ states that, in making the RFC determination, he carefully considered the: (1) entire record; (2) plaintiff's symptoms; (3) objective medical evidence; and (4) opinion evidence. (Tr. 16.) The ALJ also considered and cited numerous medical and non-medical facts from the record to explain his RFC determination. (Tr. 20, 21.) Such evidence was obtained from the medical records (summarized at Tr. 17-20), Torres's testimony (summarized at Tr. 16), Torres's Function Report answers (summarized at Tr. 16-17), and medical opinion evidence (summarized at Tr. 21-22).

#### 1. Plaintiff's Symptoms/Medical Records

The ALJ considered Torres's symptoms in light of the medical records in determining Torres's RFC. The ALJ held that Torres's alleged degree of pain and functional limitations were inconsistent with the medical records, which show that (1) except for trips to the emergency room/urgent care, Torres has not received significant ongoing treatment for her medical condition since having surgery in 2000; and (2) although examined by two neurologists, Torres failed to follow up with either physician or follow recommendations made by them. (Tr. 20.) The ALJ also noted that Torres has been observed to have a

normal gait, and no documentation exists in the medical records to substantiate Torres's claims that (1) she must lie down four hours per day; and (2) she needs an assistive device to ambulate. (Tr. 21.)

In addition, the ALJ cited medical records that indicate Torres was observed exhibiting behavior inconsistent with her alleged level of pain during two physical evaluations: (1) during her August 2004 evaluation with Michael A. Epstein, M.D., an Arizona neurologist, Torres was noted to be carrying a twenty-five pound backpack; and (2) during a February 2005, trip to the emergency room in Maine, Torres, while lying on a stretcher, was seen flexing her neck for an extended period of time to look for an item in her purse. (Tr. 20, 21, 146, 154.) Further, an assessment of Torres by Nicholas Theodore, M.D., following a neurological examination, indicated multiple positive Waddell's signs,[3] including significant pain to light touch and pain with twisting of the hips. (Tr. 21, 151.) Dr. Epstein's evaluation similarly noted a high level of reactivity to pain. (Tr. 21, 146.) The ALJ found that such results, combined with Torres's pending lawsuit related to an automobile crash in December of 2003, demonstrated signs of malingering and issues of possible secondary gain. (Tr. 20, 21.)

### 2. Objective Medical Evidence

Objective medical evidence was also cited by the ALJ in his determination of Torres's RFC. The ALJ discussed Torres's subjective complaints in relation to the objective medical evidence, again finding Torres's alleged functional limitations and degree of pain inconsistent with the case record. Torres's x-rays during her emergency room visits in December of 2003 and March of 2004 revealed no abnormalities. (Tr. 20, 128, 132-33.)

---

[3] Waddell's criteria consists of a standardized group of five types of physician signs used by examiners to detect malingering or pretending. (Tr. 21.)

An MRI dated December 15, 2004 demonstrated "no severe scarring or significant deformation or displacement of the nerve root, and no evidence of arachnoiditis, which could account for [Torres's] severe symptomatology." (Tr. 21, 151.) Dr. Epstein's physical evaluation in August of 2004 showed a decreased right ankle jerk, but was otherwise normal. (Tr. 146.) The ALJ also noted that Dr. Epstein's opinion that Torres likely had arachnoiditis was unsupported by objective clinical findings or diagnostic studies. (Tr. 20.) Dr. Theodore's physical evaluation in December of 2004 revealed no specific abnormalities or evidence of arachnoiditis, and resulted in a recommendation of increased physical therapy/patient activity. (Tr. 21, 151, 152.)

### 3. Plaintiff's Testimony and Written Reports

The ALJ also reviewed Torres's testimony and written statements in his RFC determination, finding that Torres's testimony and written reports indicated that "her impairment has not significantly impacted her activities of daily living and she has continued to engage in a fairly broad range of activities including some travel." (Tr. 20.) Torres's written statements from her Function Reports dated December 10, 2004 and June 4, 2005 indicate that Torres engaged in several activities such as transporting her children to school and/or work, preparing some meals, caring for pets, doing laundry, and purchasing groceries. (Tr. 16-17, 110-113, 118-122.) Torres's December 2004 Function Report also indicates that she was looking for a job at that time. (Tr. 110.) Torres's testimony revealed that she stopped working in October of 2004 not because of her medical impairments, but due to her employer's closing the medical office in which she worked. (Tr. 192, 193.)

As indicated above, the ALJ's decision both summarizes and discusses the medical records, objective medical evidence, and non-medical records. In addition to highlighting the substantial evidence that exists to support his RFC determination, the ALJ's review,

discussion, and analysis also satisfies the requirements of SSR 96-8p.  See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ is not required to specifically refer to every piece of evidence in the decision); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005) (same); Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (same).  Thus, Torres's argument that the ALJ's findings are vague and fail to comply with the narrative requirements of SSR 96-8p is without merit.[4]

**B.    ALJ's Alleged Failure to Perform Function by Function Assessment**

Torres also argues that the ALJ, in determining Torres's RFC, failed to properly assess Torres's ability to bend, kneel, stoop, crouch, reach, handle, push, and pull.  Torres further alleges that the above limitations were erroneously omitted from the hypothetical question presented to the vocational expert at the August 25, 2006 hearing.  Torres claims that these are "necessary restrictions" that were indicated by her treating physician, Dr. Alfred Daniels.  (Pl.'s Br. 12, 13.)  The court finds that there is substantial evidence in the record to indicate that the ALJ properly considered all of Torres's restrictions in determining Torres's RFC and included all credible restrictions in the hypothetical question presented to the vocational expert.

### 1.    ALJ's Partial Rejection of Dr. Daniels's Opinion

Torres argues that the ALJ implicitly accepted all of Torres's limitations and restrictions that were indicated by Dr. Daniels, but then failed to specifically assess such limitations in making the RFC determination.  (Pl.'s Br.10, 12.)  However, the ALJ's decision clearly states that the ALJ failed to give Dr. Daniels's opinion full weight and then explains why, citing:  (1) Dr. Daniels's limited contact with Torres (one physical examination); (2) Dr.

---

[4]Torres does not challenge the ALJ's findings regarding her credibility.

Daniels's lack of objective clinical findings; and (3) Dr. Daniels's lack of diagnostic studies. (Tr. 21.) The ALJ also noted that Dr. Daniels is not an orthopedist (Tr. 22) and appeared to base his opinion on Torres's subjective complaints, which the ALJ found to be questionable in light of the evidence. (Tr. 21.)

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources, because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

As pointed out by the respondent, Dr. Daniels's identification as Torres's "treating physician" finds little support in the record. (Def.'s Br. 12-15.) First, Dr. Daniels's only submission to the medical record is a Medical Source Statement and accompanying diagnostic letter dated November 29, 2005. These documents indicate that Dr. Daniels examined Torres on that date for the purpose of completing a form for Torres's litigation. (Tr. 166-169.) Next, it is significant that Torres was treated by two neurosurgeons, Dr. Epstein and Dr. Theodore, who provided the record with diagnostic impressions based on

physical examinations, neurological examinations, and their review of objective medical evidence. (Tr. 146-152.) Dr. Daniels's diagnosis of total disability goes far beyond Dr. Epstein's opinion that Torres "probably" had arachnoiditis, and is inconsistent with the opinion of Dr. Theodore, who recommended that Torres increase her activity and undergo physical therapy. (Compare Tr. 146, 151 with Tr. 169.) Thus, substantial evidence exists to refute Dr. Daniels's classification as Torres's treating physician and to support the ALJ's decision to accord Dr. Daniels's opinion less than full weight.

### 2.     ALJ's Function by Function Assessment

Torres further alleges that the ALJ "specifically failed to assess" Torres's abilities as required by SSR 96-8p, 61 Fed. Reg. 34474, which sets forth the Social Security Administration's policies and policy interpretations for the assessment of RFC for disability claimants. (Pl.'s Br. 12-15.) SSR 96-8p explains that the RFC assessment "must address both the remaining exertional and nonexertional capacities of the individual." Id. at 34477. The Ruling defines "exertional capacity" as "an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions." Id. Nonexertional capacity assesses the ability to perform activities such as postural, manipulative, visual, communicative, and mental work related limitations, as well as the ability to tolerate various environmental factors. Id.

In the instant case, the ALJ accorded Dr. Daniels's opinion "some weight . . . in so far as it is consistent with the limitations described in the residual functional capacity" as

determined by the ALJ. (Tr. 19, 21.) With regard to exertional capacity, both the ALJ and Dr. Daniels determined that Torres could sit for six hours in an eight-hour day, and could stand and walk two total hours during an eight-hour day. (Compare Tr. 16 with Tr. 167.) The ALJ's RFC determination regarding lifting and carrying was slightly more conservative than Dr. Daniels's, as the ALJ indicated that Torres could frequently lift and carry five pounds, with a heaviest weight lifted occasionally of ten pounds. (Compare Tr. 16 with Tr. 166.) Torres's non-exertional capacity limitations were also considered by the ALJ and Dr. Daniels, who both indicated that Torres could not climb, crawl, or be exposed to industrial hazards. However, Dr. Daniels's opinion and the ALJ's residual functional capacity determination differed with regard to the number of postural limitations indicated by Dr. Daniels and with regard to Torres's ability to push, pull, and reach. (Compare Tr. 16 with Tr. 167, 168.)

The report of Hugh Clarke, M.D., who performed a Physical Residual Functional Capacity Assessment at the Commissioner's request on August 2, 2005,[5] supports the ALJ's decision to exclude what Torres considers "necessary restrictions" from the RFC findings. Dr. Clarke stated that Torres had an unlimited ability to push/pull; could occasionally stoop; could frequently kneel, balance, and crouch; and had no manipulative, visual, or communicative limitations. (Tr. 158-160.) Thus, substantial evidence exists to support the ALJ's decision to incorporate portions of Dr. Daniels's opinion into the ALJ's

---

[5]Social Security Ruling 96-6p, 61 Fed. Reg. 34466-01, explains that state agency medical and psychological consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." Id. at 34467. In disability cases, they consider the medical evidence and make findings of fact on the medical issues, including the claimant's RFC. At the ALJ level of administrative review, these findings become "opinions" considered by the ALJ in making a decision. See 20 C.F.R. § 404.1527(f).

residual functional capacity assessment and to, likewise, partially reject the portions of Dr. Daniels's opinion which were unsupported by or inconsistent with the record.

The ALJ reviewed the evidence in the entire record and addressed each function for which he believed Torres had limitations. (Tr. 16-22.) Further, the ALJ summarized and discussed Dr. Daniels's opinion evidence, listing all of the restrictions and limitations indicated by Dr. Daniels. (Tr. 19, 21-22.) This discussion shows that the ALJ considered not only the restrictions the ALJ found applicable to Torres's RFC determination, but all of the exertional and nonexertional limitations required to be addressed by SSR 96-8p. (Tr. 19, 21-22.) Although the ALJ did not include a limitation regarding Torres's ability to bend, kneel, stoop, crouch, reach, handle, push, and pull in the RFC findings, the ALJ considered the possibility of such exertional and nonexertional limitations in accordance with SSR 96-8p. Therefore, Torres's argument that the ALJ failed to perform a complete function-by-function assessment of Torres's abilities based upon all of the relevant evidence must fail.

### 3. Hypothetical Question Presented by the ALJ

Torres also argues that the ALJ failed to present a proper hypothetical question to the vocational expert at the August 25, 2006 administrative hearing. (Pl.'s Br. 13, 16-19.) "In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). However, there is no requirement that a hypothetical question contain a "function-by-function" assessment as required when formulating RFC. Rather, the governing standard is only that the hypothetical include all of the claimant's *credible* impairments. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). Accordingly, if the record does not support the

existence of a limitation, the ALJ need not include it in the hypothetical question. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999).

As indicated above, substantial evidence exists in the record to support the ALJ's decision to exclude from the RFC findings several of the limitations and restrictions alleged by Torres or indicated by Dr. Daniels.  Hence, the ALJ did not have to include Torres's ability to bend, kneel, stoop, crouch, reach, handle, push, and pull in the hypothetical presented to the vocational expert, as the ALJ found no limitations therewith.  Thus, the hypothetical question presented by the ALJ at the hearing was appropriate and included all of Torres's credible limitations.  The court finds Torres's argument to the contrary to be without merit.

**C.      ALJ's Alleged Failure to Specify Sit/Stand Needs**

Torres claims that the ALJ's determination that Torres could perform a range of sedentary work, which included the ability to sit and stand at will (Tr. 16) requires a remand due to the ALJ's failure to specify how frequently Torres needed to alternate between sitting and standing.  (Pl.'s Br. 15-17.)  Torres claims that "normally sedentary work would not be expected to allow for a sit-stand option" and cites SSR 83-12 as support for this claim. (Pl.'s Br. 16.)  Social Security Ruling 83-12 states, in relevant part:  "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base."  Thus, "SSR 83-12 does not automatically dictate a finding of disability where an individual is limited by a sit/stand option.  Rather, SSR 83-12 indicates that a [vocational expert] should be consulted . . . ."

Burgess v. Astrue, C/A No. 2:07-3022-CMC-RSC, 2008 WL 4904874, at *5 (D.S.C. Nov. 13, 2008).

Consistent with the requirements of SSR 83-12, the ALJ questioned a vocational expert, Dr. Art Schmitt, at the hearing to "determine the extent to which [Torres's] limitations [may] erode the unskilled sedentary occupational base." (Tr. 23.)  Dr. Schmitt testified that a person of Torres's age, education, and work experience could perform a range of sedentary work, which included the ability to sit or stand at will.  Dr. Schmitt indicated three jobs existed in the national and local economies that Torres could perform.  (Tr. 199-201.)

The United States Court of Appeals for the Fourth Circuit has recognized vocational experts as "persons who have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs."  Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  Therefore, absent contrary evidence, the ALJ is justified in relying upon the determinations of the vocational expert.  See Fast v. Barnhart, 397 F.3d 468, 472 (7th Cir. 2005) ("[T]he ALJ is entitled to rely on the expert testimony of a [vocational expert]"); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony"); Carey v. Apfel, 230 F.3d 131, 145-46 (5th Cir. 2000).

In the present action, Dr. Daniels opined that Torres could stand for fifteen minutes at a time and sit, uninterrupted, for one hour at a time.  (Tr. 167.)  The Physical Residual Functional Capacity Assessment performed by Dr. Hugh Clarke stated that Torres could sit, stand, and/or walk for six hours in an eight-hour workday, with normal breaks.  (Tr. 157.)  However, there is no indication in the medical records that Torres needed to

alternatively sit and stand according to a certain schedule. Additionally, the vocational review by Dixon Pearsall, Ph.D., at the request of the plaintiff, failed to stipulate a specific sit/stand schedule (Tr. 71-75, 184-185) and the vocational expert, Dr. Schmitt, did not indicate that such a schedule was necessary to determine which jobs Torres could perform. Thus, the medical records and vocational evidence in this case fail to indicate that Torres must alternate positions at particular intervals.

The ALJ followed the directives of SSR 83-12 by eliciting testimony from a vocational expert who had professional knowledge of the availability of the sit/stand option. (Tr. 202); see Walls v. Barnhart, 296 F.3d 287 (4th Cir. 2002) (discussing SSR 83-12 and finding that vocational expert testimony provided substantial evidence to uphold an ALJ's decision regarding a claimant whose RFC included a sit/stand option at the claimant's discretion). In the present case, the ALJ was justified in relying on the vocational expert's testimony, which provided substantial evidence to support the ALJ's residual functional capacity determination. Therefore, the court rejects Torres's argument that the case should be remanded for a further assessment of Torres's "ability to sit and stand at any given time, and the frequencies of her need to change positions." (Pl.'s Br. 17.)

## RECOMMENDATION

Despite Torres's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. This court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered *de novo*, a different result might be reached.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence.     Richardson v. Perales, 402

U.S. 389 (1971).  Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  <u>Blalock</u>, 483 F.2d 773.  The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion.  <u>Shively v. Heckler</u>, 739 F.2d 987 (4th Cir. 1984).  For the foregoing reasons, the court recommends that the Commissioner's decision be affirmed.

                                                                                _____
                                                                                Paige J. Gossett
February 9, 2009                                                UNITED STATES MAGISTRATE JUDGE
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).