**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Elaine Torres, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 0:07-2865-PMD-PJG |
| v. ) | |
| ) | |
| Michael J. Astrue, Commissioner of Social ) | **ORDER** |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Elaine M. Torres ("Plaintiff") brought this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Social Security Commissioner ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). The record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), recommending this court affirm the Commissioner's decision.

## BACKGROUND

**A. Administrative Proceedings**

Plaintiff applied for SSI and DIB on November 15, 2004, alleging that she became unable to work on October 27, 2004. Plaintiff was 38-years-old on the alleged disability onset date and 40-years-old at the time of the Administrative Law Judge's ("ALJ") decision. Plaintiff has a high school education and certification as a medical assistant. Plaintiff has past relevant work experience as a medical assistant and a machine operator. She alleges disability due to a herniated disk and arachnoiditis. The Social Security Administration ("SSA") denied Plaintiff's initial applications, and after an unfavorable appeal, Plaintiff requested a hearing. (Tr. 57.) After

1

a hearing on August 25, 2006, the ALJ denied benefits in a decision dated September 28, 2006, finding that:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since October 27, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1572 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit six hours in an eight-hour workday, to stand and walk two hours in an eight-hour workday and to frequently lift and carry five pounds with a heaviest weight lifted occasionally of ten pounds, with no climbing, crawling, balancing or exposure to industrial hazards, with a sit/stand option at will and no driving of motor vehicles.

6. The claimant is unable to perform any past relevant work based on the residual functional capacity described above (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 14, 1965 and was 38 years old on the alleged disability onset date and she is currently 40 years old, which is defined as a younger individual age 18–44 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from October 27, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15–23.) The Appeals Council denied Plaintiff's request for review on June 21, 2007, making the ALJ's decision the final action of the Commissioner. Plaintiff filed this action on August 17, 2007, and the Magistrate Judge issued an R&R that recommended the court affirm the Commissioner's final decision. The Plaintiff filed timely Objections alleging that: (1) the ALJ failed to perform a complete function-by-function assessment of Plaintiff's RFC; and (2) the ALJ failed to specify the frequency of Plaintiff's need to alternate between sitting and standing.

### B. Medical Evidence in the Record

Plaintiff's first relevant diagnosis occurred in 1998 when she was diagnosed with right L5-S1 herniated nucleus polposus, which was completely resolved by October 2000 through microdiskectomy surgery. (Tr. 149.) Plaintiff had been doing well until December 2003, when she was involved in a car accident in Arizona for which Plaintiff filed a lawsuit. *Id.* She sought emergency room treatment after the accident for complaints of neck and low-back pain; however, an examination that included x-rays revealed no abnormalities. (Tr. 132.) Plaintiff returned to the emergency room for a follow-up consultation on March 29, 2004 complaining of back pain, but again, her x-rays revealed no abnormalities of the cervical spine. (Tr. 128.) Plaintiff was then seen by Advanced Urgent Care in Phoenix on July 8, 2004 for complaints of back and leg pain persisting for two to three days. (Tr. 137.) The physician prescribed pain

3

medication and scheduled a follow-up appointment the following week. (Tr. 139.) At the follow-up appointment, the physician did not find any abnormalities and instructed that Plaintiff could return to work with the suggestion of taking hot baths. (Tr. 135–36.) The physician did prescribe additional pain medication and referred her to a neurologist. (*Id.*)

Plaintiff saw a neurologist, Dr. Michael Epstein on August 2, 2004. Dr. Epstein found that Plaintiff's strength "was hard to assess . . . [as] [s]he would not make a big effort with the right leg in any direction." (Tr. 146.) He noted that while Plaintiff walked with crutches, she came to her appointment carrying a twenty-five-pound backpack. (*Id.*) Dr. Epstein determined that Plaintiff likely suffered from lumbar arachnoiditis; he increased her Neurontin dosage; and he scheduled her for epidural blocks. (*Id.*) Upon Dr. Epstein's request, Dr. Nicholas Theodore, a neurologist, examined Plaintiff on December 20, 2004, subsequent to Plaintiff's filing for SSI and DIB on November 15, 2004. Plaintiff indicated that right-lower extremity pain accounted for 60% of her pain syndrome with low-back pain accounting for 40%. (Tr. 149.) Dr. Theodore noted in his consultation report that Plaintiff received no significant pain relief from three epidural steroid injections, that she denied any physical therapy, and that she had been treated largely with narcotic medications which did not seem to be working. (*Id.*) Dr. Theodore rejected Dr. Epstein's possible diagnosis of arachnoiditis, instead finding Plaintiff's symptoms focal to her low-back and right-lower extremity. (Tr. 151.) Dr. Theodore recommended that Plaintiff begin conservative therapy that increased her activity and also to slowly taper Plaintiff off of her narcotic pain medications. (*Id.*) The imaging from December 15, 2004 that Plaintiff brought for review, according to Dr. Theodore, evidenced disk degeneration and mild scarring consistent with her previous surgery, finding no reason for neurological intervention. (*Id.*) Finally, Dr.

Theodore found that "[t]he patient also has multiple positive Waddell's signs[1] including significant pain to light touch and pain with twisting of the hips to the right." (*Id.*)

Plaintiff's next medical treatment occurred on February 18, 2005 in the emergency room of Aroostook Medical Center in Maine while she was on vacation, (Tr. 153), and Plaintiff complained of neck and spinal pains along with some numbness. (*Id.*) Plaintiff informed the emergency room physician that she ran out of her medications approximately a week and a half prior to her complained pain, and three days after running out, she began to notice increased discomfort. (*Id.*) The treating physician noted in regard to Plaintiff's neck exam that "[s]he has full range of motion, except at one point in the exam, she is lying on the stretcher and flexes her neck for an extended period of time while looking for an item in her purse without any discomfort at all." (Tr. 153–54.) The assessment was chronic pain secondary to combinations of radiculopathy and neuralgias. (*Id.*) The radiology report, issued a week later on February 23, 2005, revealed some straightening of the normal cervical curvature and no degenerative changes. (Tr. 155.) Plaintiff was given prescription refills and told to seek care from her primary physician for any further problems. (Tr. 154.)

On August 2, 2005, Dr. Hugh Clarke, at the Commissioner's request, reviewed Plaintiff's records and completed a physical residual functional capacity ("RFC") assessment. (Tr. 156–63.) Dr. Clarke found that Plaintiff could: (1) occasionally lift twenty pounds, (2) frequently lift ten

---

[1] Waddell's criterion consists of a standardized group of five types of physician signs used by examiners to detect malingering or pretending. (*See* Tr. 21, n.1.)

pounds, (3) stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, (4) sit (with normal breaks) for a total of about six hours in an eight-hour workday, and (5) push and/or pull with an unlimited ability. (Tr. 157.) Dr. Clarke further assessed Plaintiff as having the ability to (1) occasionally climb ramp/stairs and stoop, (2) frequently balance, kneel, crouch, and crawl, and (3) never climb ladder/rope/scaffolds. *Id*. In contrast to Dr. Clarke's assessment, Dr. Alfred Daniels completed a Medical Source Statement on November 29, 2005 based on one physical and a review of Plaintiff's medical records. (Tr. 166, 198.) Dr. Daniels found Plaintiff's physical abilities to be much more limited; specifically, he concluded that Plaintiff could, in an eight-hour workday: (1) occasionally lift and/or carry less than ten pounds for about one-third of the day, (2) frequently lift and/or carry a minimum of ten pounds for about two-thirds of the day, (3) stand and/or walk for two hours total and fifteen minutes without interruption, (4) sit for a total of six hours and one hour without interruption, (5) never climb, stoop, crouch, kneel or crawl and occasionally balance, and (6) not reach or push/pull without some pain. (Tr. 166–68.) Dr. Daniels even noted that Plaintiff "continues to be completely disabled." (Tr. 169.)

### C. <u>Testimony at the August 25, 2006 Hearing Before the ALJ</u>

Plaintiff testified that she was 40-years-old, unmarried, and lived with her two children and niece. (Tr. 189.) She obtained a high school diploma and a medical assistance certificate, and was unemployed at the time of the hearing. (Tr. 189–90.) Plaintiff's ex-husband pays her housing expenses and her two 20-year-old children pay her rent, which covers Plaintiff's grocery and medication expenses. (Tr. 190.) Plaintiff has no other source of income. (*Id.*) Plaintiff testified that she is able to move around for four hours a day, but must "[lie] down to stretch out for about four hours also." (Tr. 191.) Plaintiff said that although the four hours of lying down

may be separated, she cannot get through the day without stretching out for that amount of time. (Tr. 191.) Plaintiff worked her entire adult life until the alleged onset date of October 27, 2004. (*Id.*) Plaintiff worked for Revlon as a machine operator, which she testified she could no longer do because she cannot lift the machinery or stand for the that amount of time, and she also worked as a medical assistant. (Tr. 191–92.) As a medical assistant, Plaintiff's job entailed "[t]aking care of the patients, calling them back, taking their vitals, giving shots, EKGs, pulling charts for the next day's appointments, answering phones." (Tr. 192.) Plaintiff testified that she used crutches the last five months she worked as a medical assistant due to pain that radiated down her right leg. (*Id.*) Plaintiff ceased working as a medical assistant on the alleged disability onset date because the office closed. (Tr. 192–93.) Although Plaintiff stopped working due to the office closing rather than a physical inability to continue her employment, she testified that she is no longer able to work as a medical assistant because of the necessary "[s]tanding all day and carrying the charts, pulling the charts because you'd have to reach up onto the shelves." (Tr. 193.)

Plaintiff stated that she was taking Oxycontin and Flexeril three times a day. (Tr. 193–94.) Plaintiff testified that her back pain limited, but did not eliminate, her ability to drive and go grocery shopping, so long as she can use an electric cart, and cooking. (Tr. 194.) She testified that she can no longer go swimming, ride a bike, or take a shower. (Tr. 194–95.) Plaintiff further testified that, when she is not resting, she is able to clean up, do laundry, sweep, and occasionally vacuum. (Tr. 198.) The ALJ then inquired as to Dr. Daniels' role in Plaintiff's medical care and she stated, "[t]he only thing he's done for me is he's looked at my records, done the physical on me, range of motion and stuff like that, and the medication." (Tr. 198.)

7

The vocational expert ("VE"), Dr. Art Schmitt, then testified about Plaintiff's past relevant work and ability to perform other jobs. Dr. Schmitt stated that Plaintiff's job as a machine operator was unskilled and light, while her job as a medical assistant was skilled and light. (Tr. 200.) The ALJ then posed this hypothetical to Dr. Schmitt:

> [P]lease assume a hypothetical worker the same age as this claimant with the same work background and education who: retains the exertional capability for sedentary work only; with no climbing, crawling or balancing; a sit/stand option at will; no exposure to industrial hazards. In your opinion, could that hypothetical worker work on a full-time basis in unskilled, sedentary work, and if so, at what?

(Tr. 201.) Dr. Schmitt answered in the affirmative and stated that the hypothetical worker could work on a full-time basis in unskilled, sedentary work, including the following jobs: (1) surveillance system monitor, unskilled, sedentary, 1,892 in the state and 48,600 nationally; (2) telephone quotation clerk, unskilled, sedentary, 996 in the state and 63,450 nationally; and (3) coupon recycler, unskilled, sedentary, ninety-eight in the state and 13,000 nationally. (*Id.*) Plaintiff's attorney then asked Dr. Schmitt:

> If you add to that hypothesis the fact that . . . the person will have to stretch out [for 15 minutes every one hour and a half] in order to relieve the pain from her back, would that change your mind as to the availability of jobs on the national level?

(Tr. 203.) Dr. Schmitt responded that adding this fact would eliminate all jobs. (*Id.*)

### D. Magistrate Report and Recommendation

Magistrate Judge Paige J. Gossett recommended that the court affirm the ALJ's decision. (R&R at 17.) Specifically, the Magistrate Judge found that (1) the ALJ's RFC findings were unambiguous, complied with SSR 96-9p, and were properly based on Plaintiff's symptoms, medical records, testimony and written reports; that (2) the ALJ properly considered all of Plaintiff's restrictions in the RFC determination; and that (3) the ALJ did not commit error by

8

excluding from the RFC specific sit/stand needs.

## STANDARD OF REVIEW

### A. Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985).

### B. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Although this court may review parts of the Magistrate Judge's R&R *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but

>   may be somewhat less than a preponderance. If there is evidence to justify a
>   refusal to direct a verdict were the case before a jury, then there is substantial
>   evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original)). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973).

## ANLYSIS OF PLAINTIFF'S OBJECTIONS

### I.  The ALJ's Residual Functional Capacity Assessment of Plaintiff

The Magistrate Judge found that the ALJ properly considered all of Plaintiff's restrictions in determining her RFC assessment and included all credible restrictions in the hypothetical question presented to the vocational expert based on substantial evidence that exists in the record. (R&R at 9.) Plaintiff objects to these findings. As noted above, the ALJ found that:

>   After careful consideration of the entire record, the undersigned finds that the
>   claimant has the residual functional capacity to sit six hours in an eight-hour
>   workday, to stand and walk two hours in an eight-hour workday and to frequently
>   lift and carry five pounds with a heaviest weight lifted occasionally of ten pounds,
>   with no climbing, crawling, balancing or exposure to industrial hazards, with a
>   sit/stand option at will and no driving of motor vehicles.

(Tr. 16.) Plaintiff believes this sedentary exertional level assessment fails to include all of the restrictions that Plaintiff allegedly suffers from. She bases this argument on a Physical Medical Source Statement provided by Dr. Daniels, in which he found that Plaintiff has restrictions on

stooping, kneeling, crouching, reaching, and pushing/pulling. (Objections at 1.)

First, Plaintiff argues that the ALJ impliedly accepted Dr. Daniels' opinion that Plaintiff has restrictions on stooping, kneeling, crouching, reaching, and pushing/pulling. In the ALJ's opinion, he did accord "some weight to the opinion of Dr. Daniels in so far as it is consistent with the limitations described in the residual functional capacity described above." (Tr. 21.) Plaintiff believes Dr. Daniels' finding that Plaintiff has restrictions on stooping, kneeling, crouching, reaching, and pushing/pulling is "consistent" with the ALJ's ruling; therefore, the ALJ must have impliedly adopted those restrictions. The court disagrees. As the Magistrate Judge noted, a comparison of the RFC assessment and Dr. Daniels' opinion reveals that Dr. Daniels' findings on Plaintiff's restrictions were not consistent with the ALJ's conclusions. As to exertional capacity, both the ALJ and Dr. Daniels determined that Plaintiff could sit for six hours in an eight-hour day and could stand and walk two total hours during an eight-hour day. (R&R at 12; *compare* Tr. 16 *with* Tr. 167.) The ALJ's RFC determination regarding lifting and carrying was slightly more conservative than Dr. Daniels', as the ALJ found that Plaintiff could frequently lift and carry five pounds, with a heaviest weight lifted occasionally of ten pounds, while Dr. Daniels found that Plaintiff could frequently lift ten pounds. (R&R at 12; *compare* Tr. 16 *with* 166.) Furthermore, both the ALJ and Dr. Daniels determined that Plaintiff could not climb, crawl, or be exposed to industrial hazards. (R&R at 12; *compare* Tr. 16 *with* 167.) Dr. Daniels' opinion differed, however, from the ALJ's RFC assessment with regard to the number of postural limitations indicated by Dr. Daniels and with regard to Plaintiff's ability to push, pull, and reach. (R&R at 12; *compare* Tr. 16 *with* 167–68.)

In addition to being an inconsistency between the two opinions, the ALJ expressly stated

his reasons for not adopting Dr. Daniels' opinion with regard to these restrictions. The ALJ noted that "the multiple limitations [Dr. Daniels found] appear to be based on one physical examination and subjective complaints of the claimant. Dr. Daniels did not describe any objective clinical findings or provide any diagnostic studies. Futhermore, Dr. Daniels is not an orthopedist." (Tr. at 21–22.) Therefore, the court does not find that the ALJ implicitly accepted these restrictions found by Dr. Daniels. Plaintiff asserts in her Objections that an "apparent logical inconsistency" arises from this ruling by the court and the ALJ's finding that Plaintiff suffers from a severe spinal impairment. (Objections at 3.) The court disagrees, as the ALJ considered the limitations on Plaintiff in making his RFC assessment. The ALJ specifically explained in his opinion, "the residual functional capacity . . . contains accommodative limitations specifically tailored to [Plaintiff's] impairment, in particular any residual pain from her degenerative disc disease." (Tr. at 22.) Furthermore, SSR 96-9p rejects Plaintiff's assertion of obvious incongruity. It states that "[p]ostural limitations or restrictions related to such activities as climbing . . . kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work . . . [and] restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational basis of sedentary work." SSR 96-9P.

Plaintiff also objects to the Magistrate Judge's conclusion that the ALJ properly rejected parts of Dr. Daniels' opinion. The ALJ's decision stated that it failed to give Dr. Daniels' opinion full weight based on: (1) the fact that Dr. Daniels based his opinion on one physical examination of Plaintiff and her subjective complaints; (2) the fact that Dr. Daniels did not

12

describe any objective clinical findings or provide any diagnostic studies; and (3) the fact that Dr. Daniels is not an orthopedist. (Tr. 21–22.) About Dr. Daniels' limited contact with Plaintiff, Plaintiff asserts that Dr. Daniels' contact with her was no more limited than Dr. Hugh Clarke's Physical Residual Functional Capacity Assessment of Plaintiff, which Dr. Clarke made at the request of the SSA without ever seeing Plaintiff.[2] While this may be so, it does not provide support to Plaintiff's argument that the ALJ should have accorded more weight to Dr. Daniels' opinion, standing on its own. Plaintiff attempted to classify Dr. Daniels as a "treating physician," (Def. Brief at 10), most likely because the SSA typically accords greater weight to the opinion of treating medical sources. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). As the Magistrate Judge noted, however, there is little support for this classification of Dr. Daniels in the record. Dr. Daniels performed only one physical for the Plaintiff, and nothing in the record indicates that Plaintiff visited Dr. Daniels for a medical need. In fact, Plaintiff sought the physical from Dr. Daniels for the purposes of this litigation. (R&R at 10); *see also* 20 C.F.R. § 404.1502 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."). Thus, the court

---

[2] Plaintiff also believes the Magistrate Judge resorted to pure speculation to affirm the ALJ's decision when she referred to Dr. Hugh Clarke's Physical Residual Functional Capacity Assessment, "as the ALJ did not indicate he was adopting these restrictions into the RFC, and in fact specifically did not include the referenced findings into RFC." (Objections at 2.) Dr. Clarke opined that Plaintiff had an unlimited ability to push/pull; could occasionally stoop; could frequently kneel, balance, and crouch, and had no manipulative, visual, or communicative limitations. (Tr. 158–60.) While the ALJ may not have expressly adopted this opinion, the ALJ did make his findings after a "careful review of the entire record." (Tr. 16.) Furthermore, the court finds that both the record and the ALJ's opinion contain a substantial amount of other evidence that supports the ALJ's decision not to accept Dr. Daniels' opinion beyond Dr. Clarke's assessment.

agrees with the Magistrate Judge's finding that Dr. Daniels is not a treating physician.

Plaintiff also overlooks the substantial evidence in the record that contradicts Dr. Daniels' diagnosis that Plaintiff is totally disabled. Thus, the court cannot agree with Plaintiff's assertion that "the ALJ provides no specific evidence or rationale to support the finding which directly contradicts Dr. Daniels'." (Objections at 5.) Since the court incorporates the Magistrate Judge's R&R into this order, it will not reiterate the myriad of evidence the Magistrate Judge found to exist in the record that contradicted Dr. Daniels' opinion. (R&R at 6–9.) The court does note that, aside from Dr. Daniels' opinion, nothing in the record evidences a restriction or limitation on Plaintiff's ability to bend, stoop, kneel, crouch, reach and push/pull. Furthermore, nothing in the medical record substantiates Plaintiff's claim that she must lie down four hours per day and needs an assistive device to ambulate. Dr. Daniels found support for his findings in Plaintiff's subjective pain complaints, but the ALJ noted that Plaintiff's subjective complaints were of questionable credibility.[3] In fact, Dr. Nicholas Theodore noted after a neurological examination of Plaintiff that she exhibited multiple Waddell's signs (signs that indicate malingering or pretending), including significant pain to light touch and pain with twisting of the hips. (R&R at 7, Tr. 21,151.) Plaintiff's testimony revealed that she stopped working on October 24, 2004, not because of any medical impairment, but due to her employer's closing of the medical office in which she worked. This happens to be the same day that Plaintiff alleges to have become disabled.

In August 2004, Dr. Epstein observed Plaintiff carrying a twenty-five pound backpack,

---

[3]The ALJ specifically found that, "the claimant's testimony regarding the degree of pain and functional limitations [are] inconsistent with and out of proportion to the medical records, making her credibility questionable. There are also issues of secondary gain, malingering and failure to follow prescribed

14

and in February 2005, Plaintiff was able to travel to Maine. Except for trips to the emergency room/urgent care, Plaintiff has not received significant ongoing treatment for her medical condition since having surgery in 2000; she has failed to follow recommendations made by two neurologists, which included physical therapy; she has been observed to have normal gait, and all x-ray and MRI results revealed no abnormalities. Based on the medical records, objective medical evidence, and non-medical records, the ALJ properly determined that Dr. Daniels' medical opinion should be afforded less weight and properly chose only to accept it to the extent it was not inconsistent with his RFC assessment. The court finds that substantial evidence exists in the record to support this decision by the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.")

Finally, Plaintiff also argues that the ALJ failed to include these restrictions in the hypothetical question posed to the vocational expert. The court disagrees and finds that the ALJ properly assessed Plaintiff's residual functional capacity. As noted above, substantial evidence exists in the record to support the ALJ's decision to exclude from his RFC findings several of the limitations and restrictions alleged by Plaintiff or indicated by Dr. Daniels. "In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993) (citation omitted). There is, however, no requirement that a hypothetical question contain a function-by-function assessment as required when formulating an RFC. Rather, the hypothetical

---

treatment." (Tr. 20.)

only needs to include all of the claimant's *credible* impairments. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (noting that a vocational expert's opinion can only be helpful if it is "in response to proper hypothetical questions which *fairly set out* all of claimant's impairments") (emphasis added)). Accordingly, if the record does not support the existence of a limitation, the ALJ need not include it in the hypothetical question. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3rd Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*") (emphasis in original). The ALJ posed the following hypothetical to the vocational expert:

> Dr. Schmitt, please assume a hypothetical worker the same age as this claimant with the same work background and education who: retains the exertional capability for sedentary work only; with no climbing, crawling or balancing; a sit/stand option at will; no exposure to industrial hazards. In your opinion, could that hypothetical worker work on a full-time basis in unskilled, sedentary work and, if so, at what?

(Tr. 201.) The court finds this hypothetical question included all of Plaintiff's credible limitations and allowed the vocational expert to provide a helpful opinion as to whether or not occupations existed in the national and local economies that Plaintiff could perform.

A review by the court reveals that the ALJ reviewed the evidence in the entire record and addressed each function for which he believed Plaintiff had limitations. (Tr. 16–22.) The ALJ summarized and discussed Dr. Daniels' opinion evidence, listing all of the restrictions and limitations he found Plaintiff to suffer from. (Tr. 19, 21–22.) Thus, the ALJ considered not only the restrictions the ALJ found applicable to Plaintiff's RFC determination, but also all of the exertional and nonexertional limitations required to be addressed. Although the ALJ did not include a limitation regarding Plaintiff's ability to bend, kneel, stoop, crouch, reach, handle,

push, and pull in his FRC findings, the ALJ considered the possibility of such exertional and nonexertional limitations; therefore, the court finds the ALJ properly performed a complete function-by-function assessment of Plaintiff's abilities based upon all of the relevant evidence.

## II. **The ALJ Did Not Err in Failing to Specify the Frequency of the Plaintiff's Need to Alternate Between Sitting and Standing**

The Plaintiff contends that the court should remand this matter to the ALJ for a more specific assessment of her ability to sit and stand at any given time and the frequencies of her need to change positions. (Objections at 8.) Regarding Plaintiff's ability to sit and stand, the ALJ specifically found that Plaintiff has the "residual functional capacity to sit six hours in an eight-hour workday, to stand and walk two hours in an eight-hour workday . . . with a sit/stand option at will." (Tr. 16.) The ALJ further noted:

> Specifically, in addition to the purpose of the sit/stand option . . . the sedentary exertional level with its very limited lifting, carrying and standing requirements, along with no climbing, crawling, balancing, exposure to industrial hazards or driving motor vehicles, should accommodate any residual back and leg symptoms associated with degenerative disc disease.

(Tr. 22.) Plaintiff argues that normal sedentary work would not be expected to allow for a sit-stand option and relies on SSR 83-12 as support for this claim. SSR 83-12 states, in relevant part, that:

> most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

This argument fails, however, because nothing in the record supports a finding that Plaintiff suffers from an "unusual limitation of ability to sit or stand," as Plaintiff's asserts. The

Magistrate Judge noted that neither Dr. Daniels' opinion—that Plaintiff could stand for fifteen minutes at a time and sit for an hour, (Tr. 167)—nor Dr. Clarke's opinion—that Plaintiff could sit, stand, and/or walk for six hours in an eight-hour workday, (Tr. 157)—indicated that Plaintiff needed to alternate between sitting and standing according to a particular schedule. (R&R at 15–16.) Furthermore, the ALJ determined that nothing in the medical record supported Plaintiff's claim that she must lie down four hours per day and needs an assistive device to ambulate (Tr. 21), and in her Objections, Plaintiff does not cite to any recommendation by a physician that Plaintiff needs to alternate between sitting and standing at specific intervals. Thus, Plaintiff wants the ALJ to provide more specificity in his decision than Plaintiff has been able to provide herself.

At the hearing, the ALJ questioned the vocational expert, Dr. Art Schmitt, to determine the extent to which Plaintiff's limitations may erode the unskilled sedentary occupational base. Dr. Schmitt indicated that a person of Plaintiff's age, education, and work experience could perform a range of sedentary work, which included the ability to sit or stand at will. Dr. Schmitt specifically referenced three jobs that exist in the national and local economies that Plaintiff could perform. Plaintiff argues that the jobs cited by the Dr. Schmitt in this case, (1) surveillance system monitor, unskilled, sedentary, (2) telephone quotation clerk, unskilled, sedentary, and (3) coupon recycler, unskilled, sedentary, (Tr. 201), would be considered among those jobs at which a person cannot sit or stand at will, since they are not professional or managerial positions. (Objections at 7.) The court disagrees, and as the Magistrate Judge noted, Dr. Schmitt did not indicate that he needed to know a schedule of specific sitting and standing abilities to determine

18

which jobs Plaintiff could perform.[4] (R&R at 16.)

This case is analogous to *Walls v. Barnhart*, 296 F.3d 287 (4th Cir. 2002). In *Walls*, the ALJ found that the plaintiff's impairment, requiring a sit/stand option, did not render him disabled based on a vocational expert's opinion that there existed a significant number of jobs in the economy that the plaintiff could perform. *Id.* at 289. During the hearing, the ALJ asked the vocational expert a hypothetical stating that he wanted the vocational expert "to make it more restrictive in the sense of providing for no prolonged walking and standing but with . . . the allowance for a . . . *sit, stand option* at the claimant's discretion." *Id.* at 290 (emphasis added). The vocational expert responded that the plaintiff could still perform sedentary jobs. *Id.* The Fourth Circuit found that

> there is no contradiction between SSR 83-12 and the ALJ's findings regarding Walls' ability to perform a significant number of jobs in the national economy. The Ruling acknowledges that there are jobs that allow sit/stand options. It directs the agency to consult with a VE to assess the impact of that option on the occupation base. The Ruling does not prescribe a formula for assessing what jobs are available, and the VE's inclusion of sedentary jobs does not mean he disregarded SSR 83-12's recognition that a sit/stand option negatively impacts the number of unskilled jobs available.

*Id* at 291. The *Walls* court upheld the Commissioner's final decision denying disability because it was "clear that the VE knew he was responding to the ALJ's instruction to provide for . . . a sit/stand option at the claimant's discretion," i*d.* at 291–92, and as such, the ALJ was entitled to rely on the vocational expert's opinion.

In this case, the Dr. Schmitt knew he was responding to the ALJ's instruction to

---

[4] While Plaintiff argues that "employer accommodations" should not be considered in evaluating an individual's ability to work, (Objections at 7), nothing indicates that the vocational expert in this instance considered an employer making accommodations for Plaintiff in his finding that jobs existed in which Plaintiff could perform.

determine what jobs Plaintiff could perform with a sit/stand option because the ALJ specifically and expressly stated that in the hypothetical question. (Tr. 201.) Therefore, the ALJ did not need to provide any "special clarity" regarding Plaintiff's alleged need to alternate between sitting and standing and was entitled to rely on the vocational expert's assessment of jobs available to Plaintiff. *Walls v. Barnhart*, 296 F.3d 287 (4th Cir. 2002) ("A special clarity criterion would require the agency to support its decisions by more than the statutorily designated substantial evidence burden.").

## CONCLUSION

The court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Even when a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. After a careful examination of the record as a whole, the court concludes that the ALJ's decision to deny disability insurance benefits and supplemental security income was based on correct legal principles and was supported by substantial evidence; therefore, the court adopts the Magistrate Judges R&R and incorporates it into this order. It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 30, 2009**
**Charleston, SC**